**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00693-STV

MICHAEL BUENO,

      Plaintiff,

v.

CORRECTIONAL OFFICER CHEKUSH,
CORRECTIONAL OFFICER WILLARD,
CORRECTIONAL OFFICER SHOAGA, and
CORRECTIONAL OFFICER TURNER,

      Defendants.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on a Motion to Dismiss (the "Motion"), filed by Defendants Marcie Chekush, Scott Willard, and Larry Turner[1] on August 8, 2018. [#25] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [## 31, 32] This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the Motion's disposition. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] The instant Motion was not filed on behalf of Defendant Shoaga. [*See generally* #25] Accordingly, any references to "Defendants" herein denote Defendants Chekush, Willard, and Turner, and not Defendant Shoaga.

## I. FACTUAL BACKGROUND[2]

In January 2017, Plaintiff Michael Bueno, an inmate currently imprisoned at the Sterling Correctional Facility ("SCF"), was transferred from SCF to the Denver Reception and Diagnostic Center ("DRDC") to work as an Offender Care Aide ("OCA") in the facility's infirmary. [#9 at ¶ 2] As an OCA, Plaintiff is specially trained to assist inmates with serious disabilities under the Americans with Disabilities Act, and inmates who require hospice care. [*Id.*] DRDC is a facility where many Colorado Department of Corrections ("CDOC") inmates are sent for serious medical procedures or end-of-life transitions. [*Id.*]

At DRDC, Plaintiff began working at the infirmary and training with other OCAs as an "OCA III." [*Id.* at ¶ 3] The OCA III position is particularly advantageous because of the quality of work and the hourly wage, which is significantly higher than other positions within the CDOC. [*Id.*] Because Plaintiff's position was considered a "facility needs" job, Plaintiff was classified as a permanent resident at DRDC. [*Id.*] Plaintiff was placed in the incentive unit, a desirable assignment due to superior living conditions, in recognition for his many years of good behavior. [*Id.*]

On April 6, 2017, Plaintiff was informed by another inmate that Correctional Officer Houran had opened Plaintiff's mail, and displayed and laughed at photographs of Plaintiff's wife in lingerie. [*Id.* at ¶¶ 4-5] Officer Houran had harassed Plaintiff since his arrival at DRDC, including calling Plaintiff a homophobic slur over a facility intercom. [*Id.* at ¶ 9] Plaintiff reported the issue to two correctional officers, who reviewed the camera

---

[2] The facts are drawn from the allegations in Plaintiff's Amended Complaint [#9], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

footage of Officer Houran delivering mail. [*Id.* at ¶ 6] The officers informed Plaintiff that they would contact the shift commander about the incident, and apologized to Plaintiff for Officer Houran's misconduct. [*Id.*]

On April 7, 2017, Lieutenant Marcie Chekush, who was Officer Houran's supervising officer, informed Plaintiff that she had heard about Officer Houran's misconduct, and noted that staff is not allowed to deliver mail when inmates are out of their cells. [*Id.* at ¶¶ 7-8] A few days later, on April 10, 2017, Plaintiff again spoke with Lieutenant Chekush who informed Plaintiff that she would investigate the mail incident. [*Id.* at ¶ 10] On that same day, Lieutenant Chekush contacted Officer Willard, Plaintiff's case manager, and requested that Plaintiff be removed from the facility because he had complained about staff. [*Id.* at ¶ 11] Lieutenant Chekush, Officer Willard, and Case Manager Shoaga, head supervisor for all DRDC case managers, discussed Plaintiff's complaints regarding Officer Houran and agreed that Plaintiff should be removed from the facility for complaining about Officer Houran. [*Id.* at ¶ 18; *see also id.* at ¶ 23] Plaintiff was transported back to SCF on April 11, 2017, losing his incentive unit housing and his OCA III position. [*Id.* at ¶ 12] Plaintiff discovered his transfer had been justified as a bed space reclassification, approved by Officers Willard and Shoaga, even though Plaintiff was immediately replaced by another OCA III who was transferred from SCF to DRDC. [*Id.* at ¶¶ 15-16, 19, 23]

Plaintiff filed the instant lawsuit on March 22, 2018 pursuant to 42 U.S.C. § 1983. [#1] Plaintiff was ordered to file an amended complaint [#5], which he filed on May 29, 2018, alleging four First Amendment retaliation claims against Officers Chekush, Willard, Shoaga, and Turner, respectively. [#9 at 4-9] Plaintiff alleges that the officers retaliated

against him for complaining about Officer Houran's conduct by transferring Plaintiff back to SCF, in violation of his First Amendment rights.  [*See generally* #9]  Plaintiff is suing all Defendants in both their individual and official capacities.  [*Id.* at 2-4]  Plaintiff seeks declaratory relief, injunctive relief enjoining Defendants from retaliating against Plaintiff for making complaints against Officer Houran and compelling the CDOC to investigate Officer Houran, and nominal, compensatory, and punitive damages.  [*Id.* at 10]  Defendants Chekush, Willard, and Turner filed the instant Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 8, 2018.  [#25]  Plaintiff opposes the Motion.  [#40]

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction."   Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff' s case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."   *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the

plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, at 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant." *Id.* at 1110 n.3. The court, however, cannot be a pro se litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

III.    **ANALYSIS**

Defendants argue that Plaintiff's claims against them should be dismissed in their entirety.  [#25]  Specifically, Defendants contend that: (1) they are entitled to qualified immunity because Plaintiff has failed to allege a First Amendment retaliation claim, or that Defendants violated clearly established law [*id.* 5-8, at 10-11]; (2) Plaintiff's official capacity claims are barred by Eleventh Amendment sovereign immunity to the extent Plaintiff seeks damages [*id.* at 3-4]; (3) Plaintiff has failed to establish Defendants' personal participation in the alleged constitutional violations [*id.* at 4-5]; (4) Plaintiff cannot recover compensatory damages under the Prison Litigation Reform Act ("PLRA") [*id.* at 8-9]; (5) Plaintiff cannot recover punitive damages [*id.* at 9-10]; and (6) any claims for injunctive relief are moot [*id.* at 11-12].  The Court addresses each argument in turn.

### A.  First Amendment Retaliation and Qualified Immunity

Plaintiff's four claims allege that each Defendant retaliated against him after he exercised his First Amendment rights to complain about Officer Houran's misconduct.  [#9 at 4-9]  Defendants move to dismiss these claims on the grounds that Plaintiff has not adequately pled a retaliation claim.  [#25 at 5-8]  Alternatively, Defendants assert that they are entitled to qualified immunity as they did not violate clearly established law.  [*Id.* at 10-11]  The Court disagrees with both arguments.

"Qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."'"  *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  To defeat a claim of qualified immunity, a plaintiff must demonstrate: (1) that the facts alleged

make out a violation of a constitutional right, and (2) that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010).

### 1. Constitutional Violation

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quotation omitted). "Nor may prison officials retaliate against prisoners for filing administrative grievances." *Leek v. Miller*, No. 16-3225, 2017 WL 2459812, at *2 (10th Cir. June 7, 2017) (citing *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991)). Nevertheless, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison" and "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

> (1) That the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff has sufficiently pled all three elements of a First Amendment retaliation claim here. First, he alleges that he was engaged in constitutionally protected activity. Specifically, Plaintiff alleges that he reported Officer Houran's conduct "to the block

office," and spoke with two correctional officers, who reviewed the camera footage of Officer Houran delivering mail and brought the incident to the attention of the shift commander. [#9 at ¶ 6] Plaintiff also complained about Officer Houran's conduct to Lieutenant Chekush. [*Id.* at ¶¶ 7, 10] Plaintiff's complaints of Officer Houran's alleged misbehavior is protected conduct, and thus satisfies the first element of a retaliation claim.[3] *Gee*, 627 F.3d at 1189; *Chrisco v. Koprivnikar*, No. 16-cv-01553-MEH, 2017 WL 1344450, at *3 (D. Colo. April 12, 2017).

Second, Plaintiff has alleged that Defendants took action that caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Plaintiff claims that Defendants discussed Plaintiff's complaints about Officer Houran and agreed that Plaintiff should be removed from the facility for complaining. [#9 at ¶¶ 11, 14, 18-19, 28, 30] More specifically, Plaintiff alleges that Lieutenant Chekush requested the transfer, Officer Willard prepared and filed Plaintiff's

---

[3] It is not entirely clear from the face of the Amended Complaint whether Plaintiff only made informal, verbal complaints, or whether he also filed grievances. The Tenth Circuit has not explicitly addressed whether an informal complaint is constitutionally protected activity in the retaliation context, but has assumed without deciding that it is. *See, e.g.*, *Rocha v. Zavaras*, 443 F. App'x 316, 319 (10th Cir. 2011) (assuming plaintiff's informal complaints were constitutionally protected activity, but finding plaintiff had failed to allege that a negative work evaluation "would chill a person of ordinary firmness" from exercising a constitutional right); *Cooper v. Ellsworth Corr. Work Facility*, 2 F.3d 1160, 1993 WL 308095, at *2 (10th Cir. Aug. 11, 1993) (assuming without deciding that plaintiff's transfer to another facility was in retaliation to his threats to sue, but finding plaintiff failed to allege that prison officials were actually motivated by the threat to sue); *see also Carrigan v. Goree*, No. CIV-13-842-D, 2015 WL 257415, at *7 (W.D. Okla. Jan. 20, 2015) (denying motion to dismiss retaliation claim where plaintiff alleged he made verbal grievances to prison officials and then was removed from his prison job); *Sims v. Villanueva*, No. CIV 06-474 JH/CEG, 2007 WL 9734789, at *4 (D.N.M. Jan. 9, 2007) (noting that while the Tenth Circuit did not provide definitive guidance, case law suggested that an informal complaint or grievance would be constitutionally protected activity), *recommendation adopted*, 2007 WL 9734861 (D.N.M. Feb. 13, 2007). In any event, Defendants do not argue that Plaintiff fails to satisfy the first prong of the retaliation test. [#25 at 7]

reclassification paperwork, misrepresenting the reason for the transfer, and that Officer Turner gave final approval to the transfer request.  [*Id.*]  Because of Defendants' actions, Plaintiff alleges that he lost his coveted OCA III position, his assignment to the incentive unit at DRDC, and was transferred to a different facility, further from his family and where he could no longer work as an OCA.  [*Id.* at ¶¶ 3, 12]  Such allegations sufficiently plead the second element of a retaliation claim.  *See Milligan v. Archuleta*, 659 F.3d 1294, 1296 (10th Cir. 2011) (finding plaintiff could state a retaliation claim arising from the loss of his prison job); *Williams*, 926 F.2d at 998 (holding federal prisoner alleging job transfer in retaliation for filing grievances states a claim); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990) ("[P]rison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution."  (quotation omitted));  *see also Sims v. Piaza*, 462 F. App'x 228, 233 (3d Cir. 2012) ("[T]he termination of prison employment is a sufficient deterrent to meet the pleading standard for a retaliation claim.").

Finally, Plaintiff has sufficiently alleged that Defendants' actions were substantially motivated by Plaintiff's exercise of a constitutionally protected right.  To satisfy this third element, Plaintiff must establish that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place."  *Peterson*, 149 F.3d at 1144.  Courts in this Circuit have found that close temporal proximity between the exercise of the protected right, and the subsequent disciplinary action, demonstrate that the disciplinary action was substantially motivated by the exercise of the right.  *See Lewis v. Clark*, 577 F. App'x 786, 800 (10th Cir. 2014) (close temporal proximity between plaintiff's filing of grievance and plaintiff being denied access to law library plausibly supported retaliation claim and was

sufficient to survive a motion to dismiss); *Campbell v. Milyard*, No. 09-cv-01041-CMA-KLM, 2010 WL 3023368, at * 17 (D. Colo. May 4, 2010) (retaliation claim adequately pled where plaintiff alleged that after he filed a grievance against defendant, defendant began harassing plaintiff, frequently shaking down plaintiff's cell, and confiscating medical equipment as purported contraband), *recommendation adopted* 2010 WL 3023360 (D. Colo. July 29, 2010). Moreover, in the context of a retaliatory transfer, courts have held that defendants' use of unusual or irregular procedures for the transfer also may establish that the transfer was substantially motivated by the exercise of the right. *Milligan v. Reed*, No. 06-cv-00911-WYD-MJW, 2008 WL 4378521, at *4 (D. Colo. Sept. 19, 2008) (finding retaliatory motive where Plaintiff alleged "that his transfer occurred shortly after he complained" and "that Defendants did not follow the normal established procedures for requesting a transfer").

Here, Plaintiff alleges that Defendants acted because Plaintiff complained. [#9 at ¶ 11 (alleging that Lieutenant Chekush "requested that the Plaintiff be removed from the facility for complaining about staff"); *id.* at ¶ 18 (claiming that Officers Willard, Chekush, and Shoaga "discussed the complaints the Plaintiff had been making" about Officer Houran, and agreeing "they would have the Plaintiff removed from the facility for complaining about Houran"); *id.* at ¶ 29 (alleging that Officer Turner "collaborated with Defendants Shoaga and Willard to have the Plaintiff moved due to his verbal complaints")] Moreover, Plaintiff claims that he lost his job and was transferred from DRDC on April 11, 2017, five days after Officer Houran's misconduct on April 6 and Plaintiff's complaints to the block office, and the day after Plaintiff complained to Lieutenant Chekush, who then requested that Plaintiff be transferred. [*Id.* at ¶¶ 4, 6-7, 10-12]   Plaintiff notes that it is

unusual for a transfer request to be submitted and approved within a day, as normally such a transfer would take at least a week.  [*Id.* at ¶ 29]  Finally, Plaintiff alleges that while his transfer was justified as a bed space reclassification, Plaintiff was immediately replaced by another OCA III who was transferred from SCF to DRDC.  [*Id.* at ¶¶ 15-16, 19, 30]  The temporal proximity of the incident, Plaintiff's complaints and subsequent transfer, coupled with Plaintiff's specific allegations that he was transferred for complaining, plausibly allege the "but for" causation required for a retaliation claim.  *See Smith v. Greene*, No. 9:06-CV-505 (GTS/ATB), 2010 WL 985383, at *6 (N.D.N.Y. Feb. 3, 2010) (finding circumstances of "plaintiff's abrupt transfer," seventeen days after filing a written complaint and on the same day he was interviewed about the complaint, "raise[d] a question of fact regarding whether retaliation was a substantial motivation for the transfer"), *recommendation adopted*, 2010 WL 985388 (N.D.N.Y. Mar. 16, 2010). Plaintiff's allegations that Defendants did not follow normal transfer protocol, misrepresented the reason for the transfer, and immediately replaced Plaintiff with another OCA III at DRDC, also plausibly allege the causation prong.

Accordingly, because Plaintiff's allegations plausibly give rise to all three elements of a retaliation claim, the Court finds Plaintiff has adequately pled a constitutional violation against Defendants.

## 2. Clearly Established Law

Regarding the second prong of the qualified immunity analysis, the plaintiff must demonstrate that the constitutional right was clearly established at the time of the misconduct.  *Thomas*, 607 F.3d at 662.  As the Tenth Circuit recently explained:

A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing

violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established . . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted).

Here, Plaintiff has adequately pled that Defendants violated a clearly established right. The law in this Circuit has long been firmly established that prison officials cannot retaliate against inmates for filing grievances. *See Williams*, 926 F.2d at 998. It is also firmly established that terminating an inmate's prison employment or transferring an inmate to a different facility as punishment for filing a grievance constitutes unlawful retaliation. *See id.*; *see also Frazier*, 922 F.2d at 562. Because an inmate's right not to lose his employment or not to be transferred to a new facility in retaliation for filing a grievance was clearly established at the time of Defendants' alleged actions, Plaintiff has sufficiently alleged facts that, if true, would overcome a qualified immunity defense.

Accordingly, Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Plaintiff's claims on qualified immunity grounds.

### B. Official Capacity Claims

Defendants argue that to the extent Plaintiff has sued them in their official capacities for damages, Plaintiff's claims are barred by the Eleventh Amendment. [#25 at 3-4] The Court agrees.

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent." *Hunt v. Colorado Dep't of Corr.*, 271

F. App'x 778, 780 (10th Cir. 2008). "State sovereign immunity is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction." *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011). Sovereign immunity extends to state agencies functioning as an "arm" of the state, including the CDOC. *Id.* To the extent Defendants are being sued in their official capacities, they may "assert Eleventh Amendment immunity as an 'arm' of the state in that [they] assume[] the identity of" the CDOC. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002); *see also Brackeen v. Brown*, No. 11-cv-01677-RBJ-KMT, 2013 WL 328937, at *4 (D. Colo. Jan. 8, 2013) ("Plaintiff's claims for monetary relief against the CDOC Defendants in their official capacities constitute claims against the Colorado Department of Corrections." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)), *recommendation adopted*, 2013 WL 329007 (D. Colo. Jan. 29, 2013).

There are two primary exceptions to the sovereign immunity doctrine: Congress may abrogate a state's Eleventh Amendment immunity, or a state may waive its sovereign immunity and consent to be sued. *Ruiz*, 299 F.3d at 1181. Neither exception applies here. Section 1983 "does not abrogate state sovereign immunity—indeed, states are not even 'persons' within the meaning of § 1983." *Wood*, 414 F. App'x at 105 (citing *Will*, 491 U.S. at 70); *see also Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994) ("Neither states nor state officers sued in their official capacity [for monetary damages] are 'persons' subject to suit under section 1983." (citing *Will*, 491 U.S. at 70-71)). And Plaintiff does not argue that Colorado has consented to this suit. *Wood*, 414 F. App'x at 105.

Accordingly, the Court finds that the Eleventh Amendment bars Plaintiff's damages claims against Defendants in their official capacities. The Court thus lacks subject matter

jurisdiction over such claims and Plaintiff's claims against Defendants in their official capacities for damages are **DISMISSED WITHOUT PREJUDICE**.[4] The Court will also sua sponte **DISMISS WITHOUT PREJUDICE** Plaintiff's official capacity claims for damages against Officer Shoaga as barred by sovereign immunity. *See, e.g.*, *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) ("[A] court may raise the issue of Eleventh-Amendment immunity sua sponte."); *Cary v. Hickenlooper*, No. 14-cv-00411-PAB-NYW, 2015 WL 5353823, at *1 (D. Colo. Sept. 15, 2015) (dismissing official capacity claims sua sponte as barred by sovereign immunity), *aff'd*, 673 F. App'x 870 (10th Cir. 2016).

### C. Individual Capacity Claims and Personal Involvement

Defendants contend that Plaintiff has failed to allege their personal involvement in the retaliation. [#25 at 4-5] "Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Williams v. Wilkinson*, 645 F. App'x 692, 705 (10th Cir. 2016) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011)). In other words, "[t]here must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise." *Aguilar v. Colorado Dep't of Corr.*, Civil Action No. 16-00509-GPG, 2016

---

[4] "Colorado's sovereign immunity deprives [the Court] of subject-matter jurisdiction over . . . the official-capacity claims" for damages against Defendants as CDOC officials. *Wood*, 414 F. App'x at 105. Because the Court dismisses for lack of subject matter jurisdiction, dismissal is without prejudice. *See Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."); *see also Farrell v. Schwartz*, No. 14-cv-02903-MSK-CBS, 2015 WL 13730689, at *3 (D. Colo. Dec. 16, 2015) (dismissing official capacity claims for damages against CDOC officials without prejudice for lack of subject matter jurisdiction), *recommendation adopted*, 2016 WL 1156754 (D. Colo. Mar. 23, 2016).

WL 1626024, at *1 (D. Colo. Apr. 25, 2016) (citing *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)).   To the extent the plaintiff is relying upon a theory of supervisory liability, the plaintiff "must plead: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Williams*, 645 F. App'x at 705 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

Defendants argue that Plaintiff has failed to plausibly plead supervisory liability here.  But Plaintiff need not rely upon a theory of supervisory liability because he has plausibly alleged that Defendants directly participated in the alleged retaliation.   In the retaliatory transfer context, courts have found allegations that a defendant requested or approved an inmate's transfer, including requesting that such a transfer be expedited, are sufficient to satisfy the personal involvement requirement.  *See, e.g.*, *Stewart v. Cameron*, No. 3:17-cv-0066, 2018 WL 827609, at *3 (W.D. Pa. Feb. 12, 2018) (finding allegations that defendant approved transfer order, and received direct information about the transfer, sufficient to establish defendant's personal involvement in the retaliation at the motion to dismiss stage); *Tajeddini v. Gluch*, 942 F. Supp. 772, 779 (D. Conn. 1996) (holding plaintiff sufficiently demonstrated defendant's involvement where plaintiff complained directly to defendant about the transfer, and defendant approved the transfer order); *Lowrance v. Coughlin*, 862 F. Supp. 1090, 1109, 1110 (S.D.N.Y. 1994) (finding personal involvement by defendant who signed a transfer request form, and another defendant who requested that plaintiff's transfer be expedited).  *Cf. Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434, 450 (D. Colo. 2007) (finding plaintiff had failed to "allege a single

fact suggesting" defendants "actually participated in the decision" to transfer and segregate plaintiff, where it was undisputed that other officials requested the transfer, made the decision, and consulted with each other, and defendants never communicated with each other about plaintiff (emphasis omitted)).

Here, Plaintiff alleges that Lieutenant Chekush was Officer Houran's supervising officer, and was aware of Officer Houran's conduct and that it violated facility policy. [#9 at ¶¶ 7-8] Plaintiff claims that Lieutenant Chekush interviewed Plaintiff about the mail incident, stated that she would look into it, and then contacted Plaintiff's case manager, Officer Willard, and requested that Plaintiff be removed from the facility. [*Id.* at ¶¶ 10-11] According to Plaintiff, Lieutenant Chekush met with Officers Willard and Shoaga, and agreed to have Plaintiff removed from the facility based on his complaints. [*Id.* at ¶ 18] Plaintiff contends that if Lieutenant Chekush had not initiated the transfer request, Plaintiff would not have been transferred from DRDC. [*Id.* at ¶ 14] Finally, Plaintiff alleges that Officer Willard prepared and filed the reclassification paperwork for Plaintiff's transfer, misrepresenting the reason for the transfer. [*Id.* at ¶ 19] In light of the foregoing authority, these allegations are sufficient at the motion to dismiss stage to establish Lieutenant Chekush and Officer Willard's personal involvement in the retaliation.

As to Officer Turner, Plaintiff alleges that he was "the CDOC employee primarily responsible for giving final approval to reclassification decisions related to prisoner movement from one facility to another." [*Id.* at ¶ 28] But Plaintiff's claims go beyond "the bare allegation that [Officer Turner] occupies a high position in the . . . prison hierarchy." *Pangburn v. Goord*, No. 98-CV-0309E (H), 1999 WL 222553, at *6 (W.D.N.Y. Apr. 12, 1999) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir.1995)). Plaintiff additionally

alleges that Officer Turner "collaborated with Defendants Shoaga and Willard to have the Plaintiff moved due to his verbal complaints," and that Officer Turner approved the transfer request within a day, when the process normally takes a week or more. [#9 at ¶ 29] Moreover, Plaintiff indicates that as "the practical head of CDOC transportation," Officer Turner "was intimately familiar with the amount of bed space in each CDOC facility, as well as the special 'facility needs' jobs that had to be filled at each facility," and thus had additional reason to know that the transfer request was not due to bed space or facility needs, but rather resulted from Plaintiff's complaints about Officer Houran. [*Id.* at ¶ 30 (emphasis omitted)]

Defendants contend that they cannot be liable for Plaintiff's transfer to another prison "because only the Central Classification Committee of CDOC Offender Services has the authority to transfer an offender." [#25 at 5 (citing Colorado Department of Corrections, Administrative Regulation 600-01, at 8 (2018) ([#25-1 at 8])] The Court takes judicial notice of the CDOC Administrative Regulations.[5] *See Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("Th[e] court can take judicial notice of agency rules and regulations."). The regulations state that the "Central Classification Committee will review and resolve each classification action through authorizing, denying, or modifying of the instrument. The Central Classification Committee will justify any decision by documenting it in the offender's record as well as in the classification instrument program." [#25-1 at 8] But even if the regulations indicate that the Central Classification

---

[5] The Court's judicial notice of the CDOC's regulations does not convert Defendants' Motion into a motion for summary judgment under Federal Rule of Civil Procedure 56, as Plaintiff seems to suggest in his response [#40 at 7]. *See, e.g.*, *Skogen v. City of Overland Park*, No. 08-2657-DJW, 2010 WL 973375, at *2, *2 n.16 (D. Kan. Mar. 16, 2010) (collecting cases), *aff'd*, 404 F. App'x 327 (10th Cir. 2010).

Committee has the sole and final authority to authorize an inmate's transfer, Defendants could nevertheless be personally involved in the alleged retaliation by discussing Plaintiff's complaints about Officer Houran and agreeing upon transfer, initiating, signing, and approving the transfer, and ensuring that the transfer process was expedited, as Plaintiff has alleged here. *See e.g.*, *Smith*, 2010 WL 985383, at *6 (rejecting defendant's position that he was not personally involved in an inmate transfer since the Department of Corrections classification office had "final authority to order a transfer," because it was apparent that facility officials "would have initiated the transfer review and supplied pertinent information regarding the possible reasons for plaintiff's transfer").

For the foregoing reasons, Plaintiff has plausibly alleged the personal involvement of Lieutenant Chekush, Officer Willard, and Officer Turner in the retaliation. Accordingly, Defendants' Motion is **DENIED** to the extent it seeks dismissal of Plaintiff's claims against Defendants in their individual capacities.

### D.  Compensatory Damages

Defendants assert that Plaintiff cannot recover compensatory damages because he has failed to allege a physical injury.  [#25 at 8-9]  Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional."  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002).

Here, Plaintiff does not allege any physical injuries resulting from Defendants' alleged actions.  In opposition to Defendants' Motion, Plaintiff notes that he has mental

and emotional injuries "related to psychological trauma" and damages for his "loss of quality of life" at DRDC. [#40 at 10]  But even if those emotional injuries had a physical impact on Plaintiff's health, physical manifestations of mental and emotional injuries are "insufficient to withstand the 'physical injury' requirement" of the PLRA. *Hughes v. Colo. Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009); *see also Session v. Clements*, No. 14-cv-02406-PAB-KLM, 2018 WL 637461, at *10 (D. Colo. Jan. 31, 2018) ("While Plaintiff alleges that he suffered "physical injuries," those delineated by him are not distinct from any mental or emotional injuries that he may have suffered."), *recommendation adopted*, 2018 WL 1531685 (D. Colo. Mar. 29, 2018).

Accordingly, Plaintiff cannot recover compensatory damages under § 1997e(e), and the Court **GRANTS** Defendants' Motion to the extent it seeks to dismiss Plaintiff's request for compensatory damages and **DISMISSES** any compensatory damages request **WITH PREJUDICE**.  The PLRA does not, however, bar Plaintiff's recovery of nominal or punitive damages, even in the absence of a showing of physical injury.  *See Searles*, 251 F.3d at 879, 881.

### E.  Punitive Damages

Defendants argue that Plaintiff is not entitled to punitive damages because Plaintiff fails "to allege a constitutional violation, much less a violation that warrants the imposition of punitive damages."  [#25 at 10]  As discussed above, Plaintiff has plausibly pleaded a First Amendment retaliation claim.   Although Plaintiff cannot recover compensatory damages, "as a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury." *Searles*, 251 F.3d at 880.  The Court will defer the question of damages until after discovery has taken place.

"Punitive damages are only available in a Section 1983 action when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Hampton v. Evans*, No. 11-cv-01415-RM-CBS, 2015 WL 1326147, at *4 (D. Colo. Mar. 20, 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "Determining whether a defendant acted with the requisite intent 'requires an assessment of [the defendant's] subjective state of mind.'" *Id.* (quoting *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989)). Given the subjective nature of this inquiry, the fact that discovery may be needed to determine Defendants' subjective intent, and that the Court is ordering Plaintiff's First Amendment retaliation claims to proceed against Defendants in their individual capacities, the Court defers a decision on punitive damages until after discovery, and **DENIES** Defendants' Motion to Dismiss to the extent it seeks to strike Plaintiff's punitive damages request. *See id.* (finding a ruling on punitive damages premature at the motion to dismiss stage); *Aragon v. Erlanger*, No. 13-cv-01726-RBJ-BNB, 2014 WL 2462553, at *9 (D. Colo. June 2, 2014) (same).

### F. Injunctive and Declaratory Relief

Defendants next contend that Plaintiff's claims for injunctive relief have been mooted by Plaintiff's transfer from DRDC to SCF, because all Defendants are DRDC officials. [#25 at 11-12] The constitutional mootness doctrine considers whether "a definite controversy exists throughout the litigation and whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstances that may have occurred since the commencement of the action." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting 15 James Wm. Moore et al., *Moore's Federal*

*Practice* § 101.90 (3d ed. 2010)). If a claim is moot, the court lacks subject matter jurisdiction. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "The touchstone of the mootness inquiry is whether the controversy continues to touch the legal relations of parties having adverse legal interests in the outcome of the case, and this legal interest must be more than simply the satisfaction of a declaration that a person was wronged." *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (quotations omitted) (finding prisoner's claims for declaratory and injunctive relief moot in light of his release from prison). Therefore, a "declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008); *see also Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (holding the "legal interest" in the dispute "must be more than simply the satisfaction of a declaration that a person was wronged"). "An inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief related to conditions of confinement." *Mitchell v. Estrada*, 225 F. App'x 737, 741 (10th Cir. 2007); *see also Green*, 108 F.3d at 1300 (same).

Here, in addition to damages, Plaintiff seeks injunctive relief in the form of an investigation into Officer Houran's misconduct, and enjoining Defendants "from retaliating against Plaintiff for complaining due to the misconduct" of Office Houran. [#9 at 10] Plaintiff also seeks "[a] declaration" that Defendants' action violated his constitutional rights. [*Id.*] But Plaintiff has been transferred to SFC and is no longer housed at DRDC, where all Defendants are employed. [*See, e.g.*, *id.* at ¶¶ 12, 15-16] Any injunctive or declaratory relief in his favor thus "would amount to nothing more than a declaration that

he was wronged." *Green*, 108 F.3d at 1300; *see also Shepard v. Rangel*, No. 12-cv-01108-RM-KLM, 2014 WL 7366662, at *12 (D. Colo. Dec. 24, 2014) (finding declaratory relief barred where plaintiff sought "a retrospective opinion that . . . Defendants wrongly harmed him, which [wa]s an impermissible use of a declaratory judgment" (quotation omitted)). And Plaintiff does not demonstrate a reasonable expectation that he will be transferred back to DRDC and be subject to the alleged conduct again.[6] *See, e.g.*, *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (recognizing exception to the mootness doctrine where there is a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party" (quotations omitted)); *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999) ("[A] plaintiff cannot maintain a declaratory or injunctive action unless he . . . can demonstrate a good chance of being likewise injured [by the defendant] in the future." (quotations omitted)).

Plaintiff's claims for injunctive relief and declaratory relief are thus moot and the Court lacks jurisdiction to adjudicate them. Accordingly, Defendants' Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's claims for injunctive relief and those claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. *See Garman v. Campbell Cty. Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir.

---

[6] Plaintiff claims in his response to the Motion to Dismiss that the harm by Defendants is ongoing, and that "he has not been receiving legal mail" and has not been "notified of court order[s] or scheduled phone conferences." [#40 at 15] Plaintiff "ask[s] that an injunction be issue[d] for . . . the Sterling Facility not to interfere with his access" to the Court. [*Id.*] However, Defendants are employees of DRDC, not SCF, and do not have control over Plaintiff's legal mail as Plaintiff is no longer housed at DRDC. Moreover, a review of the docket indicates that Plaintiff has in fact received this Court's Orders and other filings related to this case. [*See, e.g.*, #36 (Plaintiff's response to the Court's Order setting a Status Conference [#34]); #40 (Plaintiff's response to Defendants' Motion to Dismiss)]

2010).  The foregoing analysis applies equally to Officer Shoaga, who is also a DRDC official.  [*See* # 9 at ¶ 23]  Accordingly, the Court also sua sponte dismisses any claims for injunctive and declaratory relief against Officer Shoaga.  *See, e.g.*, *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir.1996) ("Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte.").

IV.    **CONCLUSION**

For the foregoing reasons, this Court **ORDERS** that:

(1)    Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal on qualified immunity grounds, dismissal of Plaintiff's individual capacity claims, and to strike Plaintiff's punitive damages request;

(2)    Defendants' Motion to Dismiss is **GRANTED** to the extent it seeks dismissal of Plaintiff's official capacity claims, and Plaintiff's requests for compensatory damages and injunctive relief;

(3)    All of Plaintiff's claims against Defendants, including Officer Shoaga, in their official capacities for damages are **DISMISSED WITHOUT PREJUDICE**;

(4)    Plaintiff's request for compensatory damages is **DISMISSED WITH PREJUDICE**;

(5)    Plaintiff's claims for injunctive and declaratory relief are **DISMISSED WITHOUT PREJUDICE**;

(6)    Plaintiff's claims against Defendants in their individual capacities, for nominal and punitive damages, may proceed.


DATED:  December 21, 2018                          BY THE COURT:

                                                   s/Scott T. Varholak_____
                                                   United States Magistrate Judge